𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## BAILEY V. HINES, DIRECTOR GENERAL.

November 17, 1921.

1. UNITED STATES—*Action Against Director General of Railroads or Agent Designated by the President as Action Against the United States.*—An action against the Director General of Railroads, and his successor in office, as the agent designated by the President in section 206 of the transportation act (41 Stat. at L. 461) to subject the revolving fund set apart by the government to plaintiff's claim for personal injuries inflicted by a railroad company, is in substance and effect a suit against the United States.

2. UNITED STATES—*Suits Against Government.*—Although a suit is in name against an officer, if it in fact asserts a liability of the government, and a judgment will be paid out of the government's funds, it is a suit to which the United States is a party.

3. UNITED STATES—*Suits Against Government.*—The Federal government, like all other sovereign powers, had the power to deny the right to institute any suits against itself for acts growing out of its management and operation of the railroads, or to prescribe the terms and conditions under which such suits might be brought. When so prescribed they must be complied with, whether reasonable or unreasonable, or else the suit will be dismissed.

4. DIRECTOR GENERAL OF RAILROADS—*Actions Against—Name of Director General.*—In an action against the Director General of Railroads under the Federal control act, it was unnecessary to name the incumbent under the provision of general order No. 50a, directing that all actions and suits should be brought against the "Director General of Railroads and not otherwise," omitting the name of the incumbent.

5. RAILROADS—*Government Control—Suits—Parties—Agent Designated by the President.*—Section 206, paragraph (a) of the transportation act (41 Stat. at L. 461) required that suits brought thereafter, arising out of government control of the railroads, should be brought against "an agent designated by the President." Nowhere was there any requirement that the name of the agent be given in the pleadings. It would seem,

therefore, that a suit or action against the agent provided for in section 206 of the transportation act, approved February 28, 1920, and designated under the proclamation of the President of the United States of America, March 11, 1920, is a sufficient designation of the proper defendant, and that the name of the incumbent for the time being might be properly omitted, or, if inserted, stricken out as surplusage.

6.  RAILROADS—*Government Control of Railroads—Procedure in Suits Arising Out Of.*—The conditions produced by the Federal control of railroads were anomalous, and it seems fairly plain that Congress did not intend to interpose technical difficulties in the way of the general public in the assertion of their rights, at least so far as the establishment of the liability was concerned, but to leave the general public free to sue in the same courts, in the same forms of procedure and to have the benefit of the same rules of pleading and practice it enjoyed before the roads were taken over by the government, even though the suit was in effect against the United States. Except as to the enforcement of the judgment after it was obtained, the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

7.  RAILROADS—*Federal Control of Railroads—Suit—Parties—Amendment.*—Even if it were necessary in an action arising out of the Federal control of railroads to give the name of the agent designated by the President who was to be the defendant, on discovery of the fact that a wrong name had been used, the trial court should have permitted the plaintiff to amend his declaration by inserting the correct name. This should have been permitted under the liberal practice with reference to amendments prevailing in the State, and under Code of 1919, section 6104.

8.  AMENDMENTS—*Code of 1919, section 6104—Liberal Construction.*—Code of 1919, section 6104, permitting amendment of pleadings should be liberally construed.

9.  RAILROADS—*Government Control—Party Defendant in Suit for Injuries—Amendment Where the "Agent Designated by the President" is Wrongfully Named.*—In an action for personal injuries arising during the Federal control of railroads, it could make no difference to the government of the United States, when it had due notice of, and full opportunity to defend the action, whether the agent to be sued was rightly named or not. It was, therefore, clearly "in furtherance of justice" to permit an amendment if the agent was wrongfully named, and it was error to refuse it, where the substantial rights of the government were not affected by permitting the amendment to be made,

but the claim of the plaintiff would be barred by the statute of limitations if it was denied. A refusal to allow the amendment would be a practical nullification of section 6104 of the Code of 1919.

Error to a judgment of the Circuit Court of Clarke county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Curry, Curry & Lewis,* for the plaintiff in error.

*Wm. F. Keyser* and *W. R. Staples,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This action was brought on August 17, 1920, for a personal injury alleged to have been inflicted upon the plaintiff on August 21, 1919, by the Norfolk & Western Railway Company, while the same was under Federal control. The defendant named in the writ was Walker D. Hines, Director-General of Railroads, and his successor in office, as the agent provided for in section 206 of the transportation act, approved February 28, 1920 (41 St. 461), and designated under the proclamation of the President of the United States of America, March 11, 1920. The defendant, designating himself as "sometime Director-General of Railroads and agent designated by the President under section 206 of an act of Congress entitled the transportation act," appeared at rules, in proper person, and pleaded in abatement that, before the institution of the action, he had resigned as such Director-General of Railroads and agent, and that John Barton Payne had been appointed in his room and stead, and was at the time of the

institution of said action and at the time of the filing of said plea such Director-General and agent. The defendant at the same time moved the court to quash the writ in said cause on the same grounds stated in his plea in abatement and because said writ was without authority of law and was hence invalid. The plaintiff thereupon asked leave to amend his declaration and writ by substituting the name of John Barton Payne for that of Walker D. Hines, and also moved the court to reject the defendant's plea in abatement, and to dismiss his motion to quash, which request the court declined and also overruled said motions. The plaintiff then tendered a special replication that the action was not against Walker D. Hines in his individual capacity, but against the presidential agent under the transportation act, but the court declined to receive it. It having developed since the filing of defendant's plea that John Barton Payne had resigned as such Director General of Railroads and presidential agent, and that James C. Davis had been appointed in his room and stead, the plaintiff moved the court for liberty to amend his declaration and writ by substituting the name of James C. Davis for that of Walker D. Hines, and that the cause be remanded to rules for that purpose. but the court overruled said motion and entered judgment that the action of the plaintiff be dismissed. It is manifest from these proceedings that no relief is asked against the defendant, Hines, in either a personal or official capacity; that he has no interest in this litigation; and that the relief sought is against the presidential agent with a view to obtaining compensation from the fund set apart by the government of the United States for that purpose.

[1, 3] The plaintiff's objection to commencing a new action is that it would be barred by the statute of limitation. The action is in substance and effect a suit against the United States. Such suits are controversies to which the United

States are a party. "Though in name against an officer, in fact they assert a liability of the Government, and a judgment will be paid out of its funds." *Westbrook* v. *Director-General* (D. C.), 263 Fed. 211, 213, and cases cited. The Federal government, like all other sovereign powers, had the power to deny the right to institute any suits against itself for acts growing out of its management and operation of the railroads, or to prescribe the terms and conditions under which such suits might be brought. When so prescribed they must be complied with, whether reasonable or unreasonable, or else the suit will be dismissed. *Hans* v. *St. of Louisiana,* 134 U. S. 1, 17, 10 Sup. Ct. 504, 33 L. Ed. 842, and cases cited.

During the great world war, the United States, in the exercise of its war power, took control of practically all of the transportation companies in continental United States, including the Norfolk and Western Railway Company. This control was taken pursuant to a proclamation of the President of December 28, 1917, under authority of an act of Congress of August 29, 1916. (U. S. Comp. St. §1974-A.) This action of the President was confirmed by an act of Congress of March 21, 1918 (known as the Federal control act [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§3115¾-A-3115¾-P]), by which it was provided, amongst other things—

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground

that the carrier is an instrumentality or agency of the Federal government. * * * But no process, mesne or final, shall be levied against any property under such Federal control." Section 3115¾-J.

The President's proclamation of December 28, 1917, also declared, "It is hereby directed that the possession, control and operation of such transportation systems hereby by me undertaken shall be exercised through William G. McAdoo, who is hereby appointed Director-General of Railroads." The Director-General was given authority to direct how suits shall be prosecuted against the carriers under his control, and by general order No. 50 he directed that actions at law and suits in equity for causes of action arising under the Federal control should be brought directly "against William G. McAdoo, Director-General of Railroads, and not otherwise." After a brief service, Mr. McAdoo resigned, and Walker D. Hines was appointed in his room and stead, and soon after his appointment issued general order No. 50a, by which he directed that all such actions at law and suits in equity should be brought against the "Director-General of Railroads and not otherwise," omitting the name of the incumbent.

So matters continued until Federal control was terminated by the act of Congress of February 20, 1920 (known as the transportation act). Section 206, paragraph a of that section is as follows:

"Actions at law, suits in equity, and proceedings in admiralty, based on causes of action arising out of the possession, use, or operation by the President of railroad or system of transportation of any carrier (under the provisions of the Federal control act, or of the act of August 29, 1916) of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal control, be brought against an agent designated by the President for such purpose, which

agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits, or proceedings, may, within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for Federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

Pursuant to this section, the President by proclamation bearing date March 11, 1920, designated and appointed "Walker D. Hines, Director-General of Railroads, and his successor in office, as the agent provided for in section 206 of said act, approved February 28, 1920." The two positions of Director-General of Railroads and of agent were thus united in the same person, although such union was not required. Not only so, but the Director-General of Railroads, not named, but whoever he might be, and *his successor in office,* was to be presidential agent under the act, so that in future the Director-General of Railroads would also be agent, unless a different person was designated and appointed as such agent. Thereafter, Walker D. Hines, by separate resignations, resigned as Director-General of Railroads and as agent, effective May 18, 1920. These resignations were accepted, and the President, by one proclamation, dated May 14, 1920, appointed "John Barton Payne, of Illinois, Director-General of Railroads in the stead of said Walker D. Hines as Director-General of Railroads;" and by another proclamation of the same date, appointed the said "John Barton Payne, Director-General of Railroads, and his successor in office, as the agent provided for in section 206 of said act, approved February 28, 1920." Thus matters stood on August 17, 1920, when the present action was brought, not against John Barton Payne, in his official capacity, but against "Walker D. Hines, Director-General of Railroads, and his

successor in office, as the agent provided for in section 206 of the transportation act approved February 28, 1920, and designated under proclamation of the President of the United States of America, dated March 11, 1920."

[4, 5] In an action against the Director General of Railroads under the Federal control act it was unnecessary to name the incumbent under the provision of general order No. 50a, for the "Director General of Railroads is not here sued as an individual, or even by name, but as an officer, and stands for the United States." *Westbrook* v. *Director-General, supra.* Relief was not sought against the incumbent of the office either personally or officially, but against the government. In *Blevins* v. *Hines* (D. C.), 264 Fed. 1005, 1006, it is said: "It should also be said that the intent of general order No. 50a is that the defendant shall be the official, and not the individual, who happens to be in office at the time of suit." In that case the name of Walker D. Hines, preceding the words "Director-General of Railroads" was stricken out as surplusage.

The object of this action has been from its inception, and is still, to subject to the plaintiff's claim the "revolving fund" set apart by the government for that purpose, and the action has been and is in effect a suit against the United States to accomplish that purpose. The office of Director-General of Railroads was permanent, the incumbent temporary and changeable, and in the vast extent of territory subject to the Federal control act, it could not be expected that the citizens could be promptly apprised of the changes in the personnel of these temporary incumbents, and hence the wisdom of the provision of general order No. 50a dispensing with the name of such incumbent. This regulation had doubtless been found to work well, and so when the transportation act was enacted, it required suits brought thereafter to be brought against "an agent designated by the President." Nowhere is there

any requirement that the name of the agent should be given in the. pleadings. "The agent designated by the President" was a permanent position or office, while the incumbent would be temporary and changeable, and so by analogy to suits against the Director-General of Railroads, it would seem that a suit or action against "The agent provided for in section 206 of the transportation act, approved February 28, 1920, and designated under the proclamation of the President of the United States of America, March 11, 1920," is a sufficient designation of the proper defendant, and that the name of the incumbent for the time being might be properly omitted, or, if inserted, stricken out as surplusage. Counsel for the defendant in error in discussing the method by which the presidential agent should be designated, says: "Such designation can be made in only one of two ways—by the proper name of the individual so designated, or possibly by descriptive matter clearly identifying some individual." Strike out the name of Walker D. Hines in the declaration and writ, and there remains the description used by the President in his proclamation making the appointment, and in his language. What more could be needed? "The agent designated by the President under section 206 of the transportation act, approved FeFbruary 28, 1920," as accurately describes the presidential agent as "Director-General of Railroads" does the appointee to that position.

The government, in taking over the transportation lines for war purposes, manifestly intended to interfere with the rights and remedies of citizens against said lines as little as possible. Hence the comprehensive provision with reference to suits and actions contained in section 10 hereinbefore quoted.

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the rail-

roads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of Federal operations. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917, to cases where the cause of action arose before that date and the suit against the company was filed after it, and to cases where both cause of action and suit had arisen or might arise during Federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose Congress accomplished by providing that 'carriers while under Federal control' should remain subject to all then existing laws and liabilities and that they might sue and be sued as theretofore." *Missouri Pac. R. Co.* v. *Ault,* 255 U. S. —, 41 Sup. Ct. 593, 595 (65 L. Ed. —).

[6] The conditions produced by the Federal control of railroads were anomalous, and it seems fairly plain that Congress did not intend to interpose technical difficulties in the way of the general public in the assertion of their rights, at least so far as the establishment of the liability was concerned, but to leave the general public free to sue in the same courts, in the same forms of procedure and to have the benefit of the same rules of pleading and

practice it enjoyed before the roads were taken over by the government, even though the suit was in effect against the United States. Except as to the enforcement of the judgment after it was obtained, "the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control." *Missouri Pac. R. Co.* v. *Ault, supra.*

[7, 8] As already stated, this action is and has been ever since its institution substantially a suit against the United States, and the defense here made is that there was error in using the name of Walker D. Hines instead of that of John Barton Payne, as the agent designated by the President to be sued. If this change had been made, the defendant would have been described in the exact language of the President's proclamation appointing John Barton Payne as the President's agent. The defense is purely technical. The suit is none the less a suit against the United States for an injury alleged to have been inflicted by the Norfolk and Western Railway Company while under Federal control, whether the agent to be sued was correctly named or not. The process was served on the identical person who would have been served if the agent had been correctly named, and the same counsel who filed the plea for Walker D. Hines in the trial court, appeared and argued this case before us, although no relief against Hines, personally or officially, is asked. This can only mean that the defense is made on behalf of the real defendant, the government, which has in this guise appeared and made defense both in this court and in the court below. Even if it were necessary to give the name of the agent designated by the President who was to be the defendant in this suit, on discovery of the fact that a wrong name had been used, the trial court should have permitted the plaintiff to amend his declaration by inserting the correct name. This should have been permitted under the very liberal prac-

tice with reference to amendments prevailing in this State, but the cases need not be cited, for the legislature has made it statutory by declaring that "In any suit, action, motion or other proceeding hereafter instituted, the court may at any time in furtherance of justice, and upon such terms as it may deem just, permit any pleading to be amended, or material supplemental matter to be set forth in amended or supplemental pleadings. The court shall, at every stage of the proceedings, disregard any error or defect which does not affect the substantial rights of the parties. If substantial amendment is made in pursuance of this section, the court shall make such order as to continuance and costs as shall seem fair and just." Code, sec. 6104.

[9] This statute we have declared should be liberally construed. *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752. It could make no difference to the government of the United States, when it had due notice of, and full opportunity to defend the action, whether the agent to be sued was rightly named or not. It was clearly "in furtherance of justice" to permit the amendment to be made, and it was error to refuse it. The substantial rights of the government are not affected by permitting the amendment to be made, but the claim of the plaintiff will be barred by the statute of limitations if it is denied. A refusal to allow the amendment would be a practical nullification of section 6104 of the Code.

After the case was argued and submitted, but before final judgment was entered, John Barton Payne resigned as Director-General of Railroads and as presidential agent, and James C. Davis was appointed in his stead in each capacity, and the plaintiff asked to have his name substituted for that of Walker D. Hines in the writ and declaration, but the trial court refused to do so. Between March 10, 1920, and March 27, 1921, three different persons held the position of Director-General of Railroads and

presidential agent, showing how transitory was the position of incumbent, and the wisdom of permitting suits or actions against the officer or agent without the necessity of designating the name of the incumbent. No difficulty appears to have been encountered in suing the "Director-General of Railroads" without naming the incumbent, and it is not apparent how any difficulty should be encountered in suits against the agent designated by the President in like manner.

We have carefully considered the pertinent authorities cited in the briefs and in the opinion of the learned trial judge, but have not deemed it necessary to review them here, and have cited only such cases and statutes as seemed needful in support of the reasoning of the opinion. The authorities referred to in the cases we have cited, especially the *Ault Case,* furnish satisfactory reasons for the conclusions we have reached. The case of *Mason* v. *Bank,* 12 Leigh (39 Va.) 84, so confidently relied on for the defendant in error, we do not regard as applicable to the facts of this case. There certain persons were sued as a corporation who had not been incorporated, and the court very pertinently observed that "the essential error is, that the suit is brought against defendants who have no corporate character, and yet not against them in their individual characters." No such question is here involved. Here a claim against the United States is sought to be enforced against it through the medium provided by it, but a mistake is made in giving the name of the agent it has designated to defend the suit. Process was duly served on the agent of the proper defendant, and the sole question is, shall the plaintiff be allowed to amend his declaration and writ by giving the correct name of the agent in office at the time the action was brought. The amendment would seem to be fully authorized by section 6104 of the Code (first enacted in this State in 1914), if, indeed, it is necessary

28

that the name of the agent should be stated in the pleadings. The substantial rights of the plaintiff would not be left "unaffected by the change of control," if the amendment requested were refused.

For the reasons stated, the judgment of the trial court will be reversed, and, in order to meet any possible view that may be taken of the case, and any change that may take place in the incumbent of "The agent designated by the President," the trial court will be directed to permit the plaintiff to amend his declaration by striking out the name of Walker D. Hines, and, if he shall so desire, to substitute in lieu thereof the name of whoever may at the time be the incumbent of the position of "agent designated by the President," and to make such other amendments as the plaintiff may desire and to the court shall seem proper, and also with leave to the plaintiff to sue out new or additional process, if he shall be advised that the same is necessary or proper.

*Reversed.*